UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DOMINGO RODRIGUEZ and JENNIFER      11 Civ. 5534 (LTS) (KNF)
RODRIGUEZ,

                Plaintiffs,

   -against-

ATHENIUM HOUSE CORP. and ANDREWS
BUILDING CORPORATION,

                Defendants.
-----------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT
# OF MOTION TO PRECLUDE
# ROBERT S. CARGILL II, PH.D., P.E.
# FROM TESTIFYING AT TRIAL

JAROSLAWICZ & JAROS, LLC
Attorneys for Plaintiffs
225 Broadway, 24th Floor
New York, New York 10007
(212) 227-2780

# Table of Contents

Page

Table of Authorities .................................................................... i

Factual Background .................................................................... 1

**POINT I**
**THE PROPOSED TESTIMONY BY MR. CARGILL RAISES**
**NEW ISSUES, FOR THE FIRST TIME, AT A TIME WHEN**
**REBUTTAL IS IMPRACTICABLE** ...................................................... 3

**POINT II**
**DEFENDANTS PROPOSE TO OFFER MR. CARGILL TO**
**TESTIFY AS TO OPINIONS WHICH HE IS NOT QUALIFIED**
**TO GIVE** ............................................................................ 4

**POINT III**
**AS AN ALTERNATIVE TO PRECLUSION BASED ON**
**DEFENDANTS' EXPERT WITNESS EXCHANGE REGARDING**
**ROBERT CARGILL II, PH.D., P.E., A FRYE HEARING SHOULD**
**BE CONDUCTED TO DETERMINE WHETHER THE WITNESS'**
**PROPOSED TESTIMONY IS BASED ON GENERALLY ACCEPTED**
**METHODOLOGIES AND PROCEDURES IN THE AREA OF**
**BIOMECHANICAL ENGINEERING** .................................................... 6

# TABLE OF AUTHORITIES

Page

Borawich v. Shay, 68 F3d 597, 610 (2d Cir 1995) .................................. 6

Bowers v. Norfolk S. Corp., 537 F Supp 2d 1343, 1377 (M.D. Ga 2007) .................. 5

Daubert v. Merrill Dow Pharmaceuticals, 509 US 579, 592-95 (1993) ................... 6

Frye v. United States, 293 F 1013 (DC Cir 1923) ................................... 6

Gen Elec Co. v. Joiner, 522 US136 (1997) ....................................... 5, 7

Laski v. Bellwood, 2000 US App Lexis 12068, 2000 WL712502 at 3-4 (6th Cir May 25, 2000)  5

Morgan v. Girgis, 2008 U.S. Dist Lexis 39780 (2d Cir 2008) ......................... 4, 5

Nimely v. City of New York, 414 F.3d 381, 399 N.13 (2d Cir 2005) .................... 4

Shires v. King, No 2:05-CV-84, 2006 US Dist Lexis 98293,
20006 WL 5171770 at 3 (E.D. Tenn. Aug. 10, 2006) ................................ 5

Smelser v. Norfolk S. Ry Co., 105 F3d 299, 305 (6th Cir 1997) ....................... 5

## FACTUAL BACKGROUND

This is an action to recover for personal injuries sustained by plaintiff Domingo Rodriguez on September 2, 2010. At that time, Mr. Rodriguez was a postal worker delivering mail as a substitute carrier at 54 East 11th Street, New York, New York (Exhibit "A" at pp. 69, 77). He was opening the panel of the cluster mailboxes to deliver the mail (Exhibit "A" at pp. 83, 88-89, 93-94) using a key attached to a chain connected to his uniform (Exhibit "A", pp. 90-91) when a bulletin board affixed to the wall directly above the mailboxes fell from the wall and struck him on his head and back (Exhibit "A", pp. 84, 94-95). The contact caused him to lose consciousness for some short time (Exhibit "A", pp. 101-103).

On or about April 10, 2012, defendants served an Expert Witness Disclosure for Cornelius F. Dennis, P.E. (Exhibit "B").

According to that expert disclosure, Mr. Dennis had examined the lobby of 54 East 11th Street and the bulletin board on April 5, 2012. In his opinion there was no apparent reason for the bulletin board to come off the wall at the time of the accident and that the lip of the mailboxes provided a firm support for the weight of the 19.3 pounds of the bulletin board. He also opined that the two screws near the top of the board's prior location were ample to prevent the bulletin board from coming loose from the wall.

On April 12, 2012 plaintiffs served on defendants a Supplemental Expert Witness Disclosure with respect to Michael Kravitz, P.E. (Exhibit "C"). In summary, Mr. Kravitz found, based on his site inspections and review of other materials and photos, that the bulleting board had not been properly affixed to the wall at the time of the accident. Mr. Kravitz specifically did not address in his report, or in his deposition testimony (Exhibit "D" at pp. 143-144) the forces

1

that would have developed when it struck Mr. Rodriguez.

On June 5, 2012, defendants served on plaintiffs an expert witness response with respect to Robert Cargill II, Ph.D., P.E. (Exhibit "D").

In Mr. Cargill's report annexed as part of the response, the expert, who is a biomechanical engineer, concludes as follows:

- It is unknown what caused the bulletin board to become detached from the wall
- None of the damage to the bulletin board can be definitively associated with the subject incident
- The contact of the bulletin board to Mr. Rodriguez' head did not result in a closed head injury to mild traumatic brain injury
- The contact of the bulletin board to Mr. Rodriguez' back was at most a glancing contact and did not cause or exacerbate his lumbar spine pathology
- The subject incident provided no mechanism to cause or exacerbate any lumbar structural spinal pathology.

Neither the examination/inspection of the premises or bulletin board involved by either Dennis Cornelius, P.E. (Defendants' expert engineer) or Mr. Cargill had been done with the knowledge, consent or participation of plaintiffs and their counsel.

Neither Mr. Dennis, the defendants' engineer, nor Michael Kravitz, P.E., plaintiffs' expert engineer, ever addressed in their reports (and Mr. Kravitz in his report and at his deposition, Exhibit "D") the forces exerted on plaintiff's head or back by the falling bulletin board or the issue of whether those forces were sufficient to or did in fact cause the injuries complained of.

## POINT I

### THE PROPOSED TESTIMONY BY MR. CARGILL RAISES NEW ISSUES, FOR THE FIRST TIME, AT A TIME WHEN REBUTTAL IS IMPRACTICABLE

The Court's Pre-Trial Scheduling Order provides in Paragraph 2.b. that each party is to make its expert witness disclosures on issues as to which such party has the burden of proof, 45 days before the date set for the close of expert disclosure and that rebuttal disclosures must be made no later than 21 days before the expert witness disclosure date.

Defendants served the expert witness disclosure regarding Robert Cargill II, Ph.D., P.E. on June 5, 2012. The service of this disclosure, at the time it was served, did not permit plaintiff a sufficient opportunity for rebuttal.

More importantly, the disclosure by Mr. Cargill does not "rebut" anything raised by plaintiffs in any of their expert witness disclosures. Instead, Mr. Cargill's response serves to raise an entirely new issue: i.e. the forces generated by the falling bulletin board as calculated using engineering methods and formulas and the effect those forces could or could not have had in causing the injuries sustained from a biomechanical standpoint.

Putting aside the question of whether Mr. Cargill is qualified to opine on causation of the injuries which we address in Point II herein, we believe that the Cargill expert witness response is the type of a response which should have been provided at least 45 days before the expert disclosure cut-off date, not at the time when rebuttal responses were due, since Mr. Cargill's response does not "rebut" any engineering concepts previously addressed by the parties.

## POINT II

### DEFENDANTS PROPOSE TO OFFER MR. CARGILL TO TESTIFY AS TO OPINIONS WHICH HE IS NOT QUALIFIED TO GIVE

Defendants propose to offer Mr. Cargill, a biomechanical engineer, to testify as to opinions addressed to the causal relationship between the accident and the injuries which are alleged by the plaintiff to have been sustained in the accident of September 2, 2010.

It is established in this circuit that simply because a witness qualifies to testify as an expert with respect to certain areas of knowledge, it by no means follows that that expert may express opinions as to other fields. (*Nimely v. City of New York*, 414 F.3d 381, 399 N.13 (2d Cir 2005)).

With respect to a biomechanical engineer, it is now clear that they may be qualified to testify as to the forces generated by certain accidents and the likely effects of such forces on the human body. But they may not offer an opinion on whether or not the accident at issue could have caused the plaintiff's injuries (*Morgan v. Girgis*, 2008 U.S. Dist Lexis 39780 (2d Cir 2008)).

In this case, defendants intend to offer Mr. Cargill to testify to his conclusions that:

(1) The accident did not cause plaintiff's closed head injury or mild traumatic brain injury;

(2) The accident did not cause or exacerbate plaintiff's lumbar spine pathology; and

(3) The accident provided no mechanism to cause or exacerbate any lumbar structural spinal pathology.

4

Mr. Cargill is not a physician. He is not a neuropsychologist. In accordance with *Morgan v. Girgis supra*, since he is not a doctor he may not properly testify as to whether the accident caused or contributed to any of plaintiff's injuries. (See also, *Laski v. Bellwood*, 2000 US App Lexis 12068, 2000 WL712502 at 3-4 (6th Cir May 25, 2000); *Smelser v. Norfolk S. Ry Co.*, 105 F3d 299, 305 (6th Cir 1997) abrogated on other grounds; *Gen Elec Co. v. Joiner*, 522 US136 (1997); *Bowers v. Norfolk S. Corp.*, 537 F Supp 2d 1343, 1377 (M.D. Ga 2007) ("[A biomechanical engineer] may testify as to the effect of locomotive vibration on the human body and the types of injuries that may result from exposure to various levels of vibration ... [H]e may not offer an opinion as to whether the vibration ... caused plaintiff's injuries."); *Shires v. King*, No 2:05-CV-84, 2006 US Dist Lexis 98293, 20006 WL 5171770 at 3 (E.D. Tenn. Aug. 10, 2006) ("[The biomechanical engineer] clearly should be allowed to testify regarding the forces applied to plaintiff's head ... , and how a <u>hypothetical</u> person's body would re-spond (sic) to that force. He cannot offer opinions, however, 'regarding the precise cause' of plaintiff's injury.")).

Although Mr. Cargill may be qualified pursuant to *Morgan v. Girgis, supra*, to testify regarding the amount of force generated by the accident and the observed effect of such force on the human body in a comparable accident, such is not the type of testimony defendants seek Mr. Cargill to provide. The proffered testimony, therefore, should be precluded.

## POINT III

**AS AN ALTERNATIVE TO PRECLUSION BASED ON DEFENDANTS' EXPERT WITNESS EXCHANGE REGARDING ROBERT CARGILL II, PH.D., P.E., A <u>FRYE</u> HEARING SHOULD BE CONDUCTED TO DETERMINE WHETHER THE WITNESS' PROPOSED TESTIMONY IS BASED ON GENERALLY ACCEPTED METHODOLOGIES AND PROCEDURES IN THE AREA OF BIOMECHANICAL ENGINEERING**

It is beyond cavil that the proponent of scientific evidence must establish that the theory and method used by the particular witness is generally accepted in the scientific community (*Frye v. United States*, 293 F 1013 (DC Cir 1923)).

Federal Rules of Evidence 702 allows the opinion testimony of experts when the witness is "qualified as an expert by knowledge, skill, experience, training or education, [and i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine the fact in issue" (Fed R. Evid. 702).

The Supreme Court has delineated several factors to be considered in determining whether the proffered testimony will constitute scientific knowledge for the purposes of Rule 702, including (1) whether the opinion can be, and has been, tested; (2) whether the witness' opinion has been subjected to peer review and publication; (3) whether the witness' opinion has been generally accepted in the relevant scientific community; and (4) the known or potential rate of error in the expert technique (*Daubert v. Merrill Dow Pharmaceuticals*, 509 US 579, 592-95 (1993).

Notwithstanding the presumption of admissibility (see *Borawich v. Shay*, 68 F3d 597, 610 (2d Cir 1995), courts are not required to admit opinion evidence "which is connected to

existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." (*Gen Elec Co. V. Joiner, supra*),

Based on the expert witness exchange of Mr. Cargill in this case there evidently has been no testing to confirm the witness' opinions that (1) none of the damage to the bulletin board can be associated with the subject incident, or (2) that the accident did not cause plaintiff's injuries. Nor is there any indication that the methodology used by Mr. Cargill was subject to peer review or publication or is generally accepted in the scientific community.

Restated, there is no testing or literature cited by Mr. Cargill to show that the types of forces generated by the falling bulletin board in this case <u>could not</u> have caused the injuries sustained in this case.

As such, we believe a <u>Frye</u> hearing is warranted to determine the admissibility of Mr. Cargill's testimony.

Respectfully Submitted,

Norman E. Frowley
Jaroslawicz and Jaros
Attorneys for Plaintiffs

7