UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOMINGO RODRIGUEZ and JENNIFER
RODRIGUEZ,

                      Plaintiffs,

        v.

ATHENIUM HOUSE CORP. and
ANDREWS BUILDING CORPORATION,

                      Defendants.

11 CIV. 5534 (LTS) (KNF)


MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' ATHENIUM HOUSE CORP. AND ANDREWS
BUILDING CORPORATION'S MOTION TO PRECLUDE THE TESTIMONY OF
PLAINTIFFS' EXPERT MICHAEL KRAVITZ, P.E.


Of Counsel:

Scott Haworth (SH 5890)
Glenn Matera (GM 8439)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    A.     Mr. Kravitz's opinions are based on insufficient data and speculation. ....................... 2

    B.     Mr. Kravitz's opinions have not been validated by testing. ........................................ 5

    C.     Mr. Kravitz's opinions do not "fit" the facts of the case. ............................................. 7

    D.     The court may hold a hearing pursuant to Rule 104(a) of the Federal Rules of Evidence to assess the admissibility of Mr. Kravitz's opinions. .................................. 8

CONCLUSION ................................................................................................................................ 8

# TABLE OF AUTHORITIES

**CASES**

Amorgianos v. National Railroad Passenger Corp.,
 303 F.3d 256 (2d Cir. 2002) .......................................................................................... 2, 7

Brooks v. Outboard Marine Corporation,
 234 F.3d 89 (2d Cir. 2000) ................................................................................................ 5

Cacciola v. Selco Balers, Inc.,
 127 F. Supp. 2d 175 (E.D.N.Y. 2001) ............................................................................... 6

Colon ex rel. Molina v. BIC USA, Inc.,
 199 F. Supp. 2d 53 (S.D.N.Y. 2001) ................................................................................. 8

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 509 U.S. 579 (1993) ............................................................................................ 1, 2, 5, 7

Faryniarz v. Nike, Inc.,
 2002 WL 1968351 (S.D.N.Y. 2002) .................................................................................. 6

General Elec. Co. v. Joiner,
 522 U.S. 136 (1997) .......................................................................................................... 2

Kumho Tire Co., Ltd. v. Carmichael,
 526 U.S. 137 (1999) .......................................................................................................... 1

R.F.M.A.S., Inc. v. So,
 748 F. Supp. 2d 244 (S.D.N.Y. 2010) ............................................................................... 2

Rypkema v. Time Manufacturing Company,
 263 F. Supp. 2d 687 (S.D.N.Y. 2003) ............................................................................... 5

Stone v. 866 3rd Next Generation Hotel, LLC,
 2002 WL 1046706 (S.D.N.Y. 2002) ...................................................................... 2, 3, 4, 8

**RULES**

Fed. R. Evid. 104 ............................................................................................................... 1, 7, 8

Fed. R. Evid. 702 .................................................................................................................. 1, 2

Fed. R. Evid. 703 ..................................................................................................................... 1

Case 1:11-cv-05534-LTS-KNF   Document 62   Filed 06/27/12   Page 4 of 13

**PRELIMINARY STATEMENT**

Defendants Athenium House Corp. and Andrews Building Corporation, submit this Memorandum of Law in support of their motion pursuant to Rules 702 and 703 of the Federal Rules of Evidence for an Order precluding plaintiffs' engineering expert, Michael Kravitz, P.E. from testifying at the trial, or in the alternative, for a hearing pursuant to Rule 104(a) of the Federal Rules of Evidence to assess the admissibility of Mr. Kravitz's opinions.

Defendants' respectfully refer this Court to the Declaration submitted in support of this motion regarding the pertinent facts.

**ARGUMENT**

F.R.E. 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the witness has reliably applied the principles and methods to the facts of the case.

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589 (1993), the Supreme Court held that a trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.  In <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137,149 (1999) (citing <u>Daubert</u>, 509 U.S. at 592), the Supreme Court held that "Federal Rules 702 and 703 grant all expert witnesses, not just 'scientific' ones, testimonial latitude unavailable to other witnesses on the assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." Accordingly, the trial court must act as a "gatekeeper" to ensure that an expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the

same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho, 526 U.S. at 152.

This Court, in following the Supreme Court's directives, has held that in assessing reliability, the District Court Judge's inquiry "must focus not on the substance of the expert's conclusions, but on whether those conclusions were generated by a reliable methodology" and that "[w]hen an expert opinion is based on data, a methodology or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." R.F.M.A.S., Inc. v. So, 748 F. Supp. 2d 244, 252 (S.D.N.Y. 2010) (citing and internal references omitted). In assessing methodology, the R.F.M.A.S. decision clarified that "for methods or theories that are not purely scientific, the court should … adap[t] the *Daubert* criteria as needed for the purpose of assessing reliability." Id.

**A. Mr. Kravitz's opinions are based on insufficient data and speculation.**

It is clear that when an expert's opinion is based on data or a methodology that is inadequate to support the conclusions reached, the opinion must be excluded. Amorgianos v. National Railroad Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002). The Supreme Court has held that expert conclusions and methodology are intrinsically connected:

> [N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

As the court summarized in R.F.M.A.S., supra, "[e]xpert testimony that is merely subjective belief or unsupported speculation should be excluded." 748 F. Supp. 2d at p. 253 (citing and internal referenced omitted).

This Court considered a matter factually similar to this one in Stone v. 866 3rd Next Generation Hotel, LLC, 2002 WL 1046706 (S.D.N.Y. 2002). In Stone, the plaintiff sought to

2

recover damages for injuries sustained when she fell while entering a hotel through automatic doors. Plaintiff's liability expert prepared two reports in connection with his evaluation of the case, concluding that the cause of the accident was the negligent installation and improper maintenance of the doors, which closed and caused plaintiff to fall.  Id. at *1.  This Court granted defendants' motion to preclude after concluding that the expert's opinion lacked "evidentiary reliability" because "no data, testing methodology or empirical evidence [was] offered to support [the expert's] conclusions" Id. at *3.

In precluding the expert's first report, this Court noted that the expert did not have "any objective data regarding the *actual conditions under which the accident occurred on the date in question*" Id. at *2 (emphasis added).  As to the second report, which was in part based on deposition testimony and generalized engineering standards, the Court determined that it was not possible to test the expert's theory of causation as to the improper testing of the doors at the time of their installation because his report lacked "objective data concerning the testing or adjustment of the automatic doors *at the time of the accident* or information concerning *the operation of the doors at that time*" Id. at *4 (emphasis added).  Ultimately, the Court found the causation opinions in both reports more prejudicial than probative:

> Because the causation opinions [in the reports] are based on assumptions and speculation, without presenting objective scientific, technical or factual foundation as to the conditions that may have existed at the time of the accident or the analytical method employed in forming the conclusions presented, any probative value of the causation opinions in those reports is substantially outweighed by their potential for undue prejudice, confusion of the issues and misleading the jury. Id.

Just like plaintiff's expert in Stone, Mr. Kravitz can offer no reliable information regarding the "actual conditions under which the accident occurred on the date in question." He opines that the board was improperly mounted by the defendants or on their behalf because it allegedly fell, no matter how the mounting was accomplished.  He did not inspect the wall or the bulletin board until

3

one year, seven months post-accident. He clearly has no specific knowledge as to how the board was installed at the time of the accident or the hardware used in connection with the installation. See Ex. C, Kravitz Rpt. at p. 14, where he opines that the installation was defective "no matter how the bulletin board was actually affixed." In essence, Mr. Kravitz believes that an accident happened so there must be a defect.

By the time of Mr. Kravitz's inspection, the board had been moved to a different location in the lobby and the original mounting hardware in use at the time of the accident could not be found. Nonetheless, Mr. Kravitz speculates that the accident likely resulted from either the use of the wrong sized screws which allowed the screws to slip from their plastic anchors or from the use of plastic anchors that did not have a sufficient load capacity to hold the weight of the board. He offers this opinion without having any reliable evidence to show that plastic anchors were even used to mount the board at the time of the accident.

These theories are based on Mr. Kravitz's *ipse dixit* conjecture. He never inspected the screws that were allegedly used with the plastic anchors he found. He therefore has no factual basis to opine as to the size, shape or type of the screws. This is simply an "after the fact" assumption of the type precluded by this Court in Stone, supra.

As to the load capacity of the plastic anchors, the anchors were never removed from the wall, nor was there any request that they be removed. As such, Mr. Kravitz never analyzed their load capacity. He nonetheless, opines that the board fell because its weight must have exceeded the resistance forces of the plastic anchors. Had Mr. Kravitz analyzed that which is required to perform a reliable engineering analysis, he would have discovered that the capacity of the plastic anchors was more than sufficient to safely hold the board. See Ex. E, Cargill Rpt. at p. 11. Analysis performed

by Robert S. Cargill II, Ph.D., P.E. demonstrates that "with two screws in plastic wall anchors, the safety factor would have been greater than 20 [even] according to Kravitz's numbers." Id.

Further, Mr. Kravitz's weight and load capacity data are unreliable because he failed to accurately weigh the bulletin board itself. He revised his report subsequent to issuance because his conclusions (which remained unchanged in the revised version of the report) relied on an assumption that the board weighed 25 pounds instead of his subsequently used "approximate" weight of 16 pounds. A reliable weighing of the bulletin board using a calibrated digital scale, however, tells us that the board actually weighed only 14.7 pounds. See Exhibit "E," Cargill Rpt. at p. 7.

Lastly, it must be noted that after causally relating the anchors and screws to the happening of the accident, Mr. Kravitz states at pages 10 and 11 of his report that the plastic anchors *did not appear to have ever been used and were likely inserted into the wall after the accident*. Accordingly, by his own admission, his conclusions as to the plastic anchors and screws are irrelevant, unreliabile and inadmissible.

**B.  Mr. Kravitz's opinions have not been validated by testing.**

One of the principle criteria for determining the reliability of an expert's opinion is whether the opinion has been subjected to testing. Daubert, 509 U.S. at 593. As stated by this Court in Rypkema v. Time Manufacturing Company, 263 F. Supp. 2d 687, 692 (S.D.N.Y. 2003), the need for testing "is especially true in the area of engineering, where products must be practical. Thus, adherence to engineering standards of intellectual rigor almost always requires testing of a hypothesis…" (internal references omitted).

For example, in Brooks v. Outboard Marine Corporation, 234 F.3d 89 (2d Cir. 2000), plaintiff, whose hand was amputated by propeller on an outboard boat motor, brought a product liability action against the manufacturer of the motor. Plaintiff proffered an expert who was to testify that an emergency motor shut off device, known as a "kill switch," could have prevented the

5

accident or lessened its severity.  The manufacturer moved to preclude the expert from testifying on the grounds that his conclusion that the kill switch would have activated and prevented or lessened the severity of the accident was untested and unsupported by any examination of the actual boat or motor, or the interview of any witnesses.  Id. at 91.  In granting the manufacturer's motion to preclude, the Court relied upon the fact that plaintiff's expert had not performed any tests on the actual boat or engine involved in the accident, conducted any interviews with any witnesses, or conducted "any actual testing to determine whether the use of a lanyard-activated kill switch would have disengaged the engine under the circumstances."  Id.

Similarly, in Cacciola v. Selco Balers, Inc., 127 F. Supp. 2d 175, 183 (E.D.N.Y. 2001), plaintiff's engineer's testimony was excluded when the Court found that the expert did not inspect the actual product alleged to have caused harm to the plaintiff and did not conduct an interview with the key witness.  The Court also noted that the expert's report contained inconsistent statements.  In excluding the testimony, the Court opined that "[t]he opinion which [the expert] would express rests upon unsubstantiated generalizations, speculative hypotheses and subjective evaluation that are based neither upon any professional study or experience-based observation."

Mr. Kravitz's theories are properly precluded for the same reason as those discussed above.  For example, while he opines that the renovation of the second floor during the time period when the accident occurred created "building vibrations that, more probably than not, added to [the] bulletin board falling off of the wall," he offers no factual support or test data supporting this theory.  See Ex. C, Kravitz Rpt. at p. 6.  He testified that he did not use any vibration monitoring equipment or perform a single test showing that renovation could have resulted in any vibration in the lobby area at all.  Thus, his conclusion that these unknown, unmeasured and very possibly non-existent vibratory forces would have exceeded the amount of weight the plastic wall anchors – that may or

6

may not have been present – could support, are speculative and lack the requisite evidentiary foundation.  See Faryniarz v. Nike, Inc., 2002 WL 1968351, * 3 (S.D.N.Y. 2002) (expert testimony as to causation excluded when conclusions were determined to rest on facts not supported by verifiable tests).

### C. Mr. Kravitz's opinions do not "fit" the facts of the case.

For expert testimony to "fit," the testimony must have a valid "connection to the pertinent inquiry" and be "sufficiently tied to the facts of the case so that it will aid the jury in resolving a factual dispute."  Daubert, supra at 591-592.  Accordingly, in determining admissibility, the Court must determine whether the expert's theory or methodology is relevant in that it "fits" the facts of the case.  See Amorgianos v. National Railroad Passenger Corp., 303 F.3d 256 (2d Cir. 2000).

Here, Mr. Kravitz cherry-picks evidence and ignores facts that do not fit his causation theories.  For example, while identifying at least six screw or nail holes at the site of the original installation, he did nothing to determine whether the board may have been mounted directly to the wood studs through one of the holes he found.  This is an installation method that both Mr. Kravitz and the board's manufacturer agree is proper and safe.  In this regard, Mr. Kravitz failed to attempt to locate the wall studs using a stud finder during either of his two inspections.  Had he done so, he would have learned that two of the six holes in the wall corresponded with the studs.  See Ex. E, Cargill Rpt. at p. 6.  Since an expert must conform his opinions to the facts of the case, Mr. Kravitz's failure to address the presence of holes in the wall at the location of the wood studs and rule out the use of the wood studs for mounting at the time of the accident renders his opinion unreliable and of no assistance to the jury.

7

### D. The court may hold a hearing pursuant to Rule 104(a) of the Federal Rules of Evidence to assess the admissibility of Mr. Kravitz's opinions.

"A court may hold a pretrial evidentiary hearing pursuant to Federal Rule of Evidence 104(a) to determine whether expert scientific (or other specialized) testimony is reliable under *Daubert*." Stone v. 866 3rd Next Generation Hotel, LLC, 2002 WL 1046706, *4 (S.D.N.Y. 2002). However, the party proffering the expert testimony at issue is not automatically entitled to a Rule 104(a) hearing. See Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 70 (S.D.N.Y. 2001). Rather, it is the Court's decision as to whether a hearing would better facilitate an examination of an expert's methodology and reliability. See Stone, supra at *4. In Stone, this Court opined a hearing was not necessary in precluding plaintiff's expert because he did not present "any scientific or technical methodology whose reliability could be examined in the context of such a hearing." Id. Here, Mr. Kravitz similarly did not set forth verifiable testing methodology, and his testimony should be precluded in its entirety. However, defendants respectfully request a Rule 104(a) hearing to the extent this Court deems it would be useful in evaluating Mr. Kravitz's proposed testimony.

### CONCLUSION

Based on the foregoing, it is respectfully submitted that defendants' motion should be granted in its entirety. In the alternative, a hearing should be held pursuant to F.R.E. 104(a) to determine the admissibility of Mr. Kravitz's proffered testimony.

Dated: New York, New York
June 27, 2012

HAWORTH COLEMAN & GERSTMAN, LLC

By: _/s/ Scott Haworth_ Scott Haworth (SH 5890)

and

FUREY, KERLEY, WALSH, MATERA & CINQUEMANI, P.C.

            s/
By:  Glenn Matera (GM 8439)