UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DOMINGO RODRIGUEZ, et al.,

        Plaintiffs,

  -v-                                   No. 11 Civ. 5534 (LTS)(KNF)

ATHENIUM HOUSE CORP., et al.,

        Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

In this action, Plaintiffs Domingo Rodriguez ("Plaintiff" or "Rodriguez") and Jennifer Rodriguez (collectively, "Plaintiffs") sue Defendants Athenium House Corp. and Andrews Building Corporation (collectively, "Defendants") to recover damages for personal injury and loss of consortium. Rodriguez's injuries were allegedly sustained when a bulletin board hanging in the lobby of Defendants' apartment building fell and struck him on the head and back. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.

Before the Court are two motions - 1) Defendants' motion to preclude the testimony of Michael Kravitz ("Kravitz"), a consulting engineer who has been designated by Plaintiffs as an expert witness; and 2) Plaintiffs' motion to preclude the testimony of Robert Cargill ("Cargill"), a biomechanical engineer who has been designated by Defendants as an expert witness. The Court has reviewed carefully all of the parties' submissions and, for the following reasons, Plaintiffs' motion to preclude is granted in part and denied in part, and Defendants' motion to preclude is denied in its entirety.

BACKGROUND

Kravitz Report

Kravitz is a licensed civil engineer who received a Bachelor of Civil Engineering degree from the City College of New York in 1966.  In his expert report, Kravitz relies upon several sources of information, including the deposition testimony of multiple witnesses, building records, and observations and measurements made during two visits to the scene of the accident, in determining why the bulletin board fell from the wall.  After conducting a static and dynamic analysis of the forces on the board, Kravitz formulated hypotheses as to the means and sufficiency of the bulletin board's installation at the time of the accident, and ultimately opined that the bulletin board was not properly anchored to the drywall.  Kravitz stated that "[t]his type of bulletin board does not normally fall off the wall if properly installed," that the bulletin board was not installed according to the manufacturer's instructions, and that there were safer and more reliable methods of affixing the board to the drywall.  Kravitz's ultimate conclusion is that, "[n]o matter how the bulletin board was actually affixed to the wall in this case it was not affixed in accordance with good and accepted construction, maintenance, and engineering standards and practices."

Cargill Report

Cargill is a licensed professional engineer who received a Bachelor of Science degree in biomedical engineering from Rensselaer Polytechnic Institute in 1989, and Master of Science and Ph.D. degrees in bioengineering from the University of Pennsylvania in 1991 and 1994, respectively.  Cargill does not possess a medical degree.  In formulating his expert report, Cargill relied on several sources of information, including the deposition testimony of several

witnesses, Rodriguez's medical records, and observations and measurements made during a visit to the site of the accident.

After conducting a static and dynamic analysis of the forces on the bulletin board, Cargill concluded that the cause of the board's fall was unknown. After inspecting damage to the three corners of the bulletin board and other miscellaneous scratches, Cargill further concluded that this damage "[could not] be definitively associated with the subject incident."

Cargill next analyzed the magnitude and direction of the bulletin board's impact on Rodriguez's head and back, and concluded that "the potential head acceleration experienced by Mr. Rodriguez was well below accelerations associated with mild traumatic brain injury and was within the head accelerations measured in vigorous everyday activities." In support of this opinion, Cargill cited several articles related to head acceleration, and further concluded that "[t]here was no mechanism for Mr. Rodriguez to sustain a closed head injury or mild traumatic brain injury in this incident."

With respect to Rodriguez's medical records, Cargill stated that Rodriguez's CT scans did not reveal any extra-cranial fluid collections or large contusions. Cargill also noted that imaging studies of Rodriguez's lumbar spine did not indicate any acute changes, fractures, subluxations, or bony damage, and that Rodriguez's MRI studies noted multi-level degenerative changes. Cargill concluded that any contact between the bulletin board and Rodriguez's back would have been "glancing in nature" and that "there was no mechanism for the subject incident to cause or exacerbate lumbar spine structural pathology."

## DISCUSSION

Rule 702 of the Federal Rules of Evidence provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Under Rule 702 courts must "[ensure] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 597 (1993).  A court may consider four factors in determining the reliability of an expert's reasoning or methodology: (1) whether the theory or technique relied on has been tested; (2) "whether the theory or technique has been subjected to peer review and publication;" (3) whether there is a "known or potential rate of error" and the "existence and maintenance of standards controlling the technique's operation" in the case of a particular scientific technique; and (4) whether the theory or method has been generally accepted by the scientific community.  Daubert, 509 U.S. at 593–94.  "Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 157 (1999).

Motion to Preclude the Kravitz Report

Defendants contend that Kravitz's report should be excluded because it is based on insufficient data and unreliable methods.  In particular, Defendants claim that Kravitz had no information regarding the actual condition of the bulletin board at the time of its installation or at the time of the accident.  Defendants argue that Kravitz's assumptions as to how the board was hung at the time of the accident are speculative and internally inconsistent with his later

statements.  Additionally, Defendants note that, in conducting his analysis, Kravitz initially used an incorrect bulletin board weight, and that he failed to acknowledge that two of the mounting holes he discounted as unstable because they were lodged in drywall, were actually located in wall studs.  Finally, Defendants argue that Kravitz never tested his theory that the bulletin board fell because of vibrations resulting from renovation work occurring in the building, and that any conclusions which rest on that theory are therefore unreliable.

The Second Circuit has held that expert testimony may be excluded for being "speculative and untested."  Lynch v. Trek Bicycle Corp., 374 F. App'x 204, 207 (2d Cir. 2010). Expert opinions may also be excluded "when based on conjecture rather than evidence in the record."  Allstate Insurance Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 458 (2d Cir. 2007).  In Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002), the Second Circuit held that an expert's analysis must "be reliable at every step" to warrant admissibility, but that the standard is a liberal one:

> A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible.  The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions.  This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony (internal citations omitted).

Kravitz's analysis relies on several sources of information, including testimony from Rodriguez and other witnesses who frequented the building lobby, observations from his own inspections of the accident site, and measurements of the board and the area where it was mounted prior to the accident.  Cf. Brooks v. Outboard Marine Corp., 234 F.3d 89, 91–92 (2d Cir. 2000) (precluding report where expert formed conclusions about boat crash without having

seen the actual boat and was unaware of its dimensions or design).  Any disputes over which holes represented the board's points of attachment to the wall, precisely how the board was mounted, and the exact measurements of the bulletin board go to the weight rather than the admissibility of Kravitz's testimony.  The Court recognizes that this is the type of "reliable, albeit debatable, expert testimony" that the adversary system is quite capable of challenging.  Amorgianos, 303 F.3d at 267.  The Court therefore declines to find that Kravitz has based his conclusions on insufficient data or unreliable methods.

As for Kravitz's theory that the board may have fallen because of vibrations resulting from building renovations, the expert report indicates that Kravitz recognized building vibrations as only one possible factor contributing to the bulletin board's fall, and also based his conclusions as to why the board fell on several other factors, such as the board's points of attachment to the wall.  Nor was Kravitz's vibration theory wholly speculative.  Both building records and witness testimony indicated that the elevator and second floor were under renovation in the months leading up to the accident.  In light of the disruption that construction and heavy use of the stairwell near the bulletin board might have caused during that time period, the Court finds Kravitz's opinions as to building vibrations sufficiently reliable to be admissible.

Motion to Preclude the Cargill Report

Plaintiffs argue that as a biomechanical engineer, Cargill is permitted to provide an expert opinion regarding general causation, but that he is unqualified to offer an opinion as to specific causation.  Rule 702 provides that in order to offer the trier of fact "scientific, technical, or other specialized knowledge," the witness must be "qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  The Second Circuit has held that

"because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." Nimely v. City of New York, 414 F.3d 381, 399 n. 13 (2d Cir. 2005). While the Second Circuit has not applied this logic in the context of the expert testimony of a biomechanical engineer, this district has held that biomechanical engineers are not qualified to testify "as to whether [an] accident caused or contributed to any of plaintiff's injuries," as this would amount to a medical opinion. Morgan v. Girgis, 07 Civ. 1960 (WCC), 2008 WL 2115250, at *6 (S.D.N.Y. May 16, 2008). In Morgan, the court held that biomechanical engineers may only testify "about the nature and amount of force generated by the accident in question and the observed effect of that force on a human body in comparable accidents. In doing so [they] may offer comparisons between that force and the forces to which the human body is subject during other activities." Id. Other courts have adopted similar holdings. See Laski v. Bellwood, 2000 WL712502, at *3-4 (6th Cir. May 25, 2000) ("'[B]iomechanics are qualified to determine what injury causation forces are in general and can tell how a hypothetical person's body will respond to those forces, but are not qualified to render medical opinions regarding the precise cause of a specific injury.'") (quoting Smelser v. Norfolk S. Ry. Co., 105 F.3d 299, 305 (6th Cir. 1997), abrogated on other grounds by Gen. Elec. Co. v. Joiner, 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)); see also Shires v. King, 2006 WL 5171770, at *3 (E.D. Tenn. Aug. 10, 2006) (holding that biomechanical engineer "clearly should be allowed to testify regarding the forces applied to plaintiff's head . . . and how a *hypothetical* person's body would re-spond [sic] to that force") (emphasis in original).

Adopting the reasoning in Morgan, the Court finds that Cargill may not offer opinions as to specific causation. Cargill has no medical degree and is accordingly unqualified

to venture into the realm of medical diagnosis by reviewing Rodriguez's primary medical records and opining as to the extent of his injuries.  Moreover, Cargill's analysis is not couched in the terms of general causation, but rather purports to show that the accident did not cause Rodriguez's particular injuries.  The Court finds that Cargill is unqualified to offer an expert opinion regarding the precise cause of Rodriguez's specific injury, and finds his testimony inadmissible to the extent that it purports to do so.

Plaintiffs also challenge Cargill's statement that "the potential head acceleration experienced by Mr. Rodriguez was well below accelerations associated with mild traumatic brain injury and was within the head accelerations measured in vigorous everyday activities." Although this statement is limited to general causation and, as such, is well within the realm of Cargill's expertise as a biomechanical engineer, Plaintiffs argue that Cargill's theory is nonetheless untested and based on unreliable methods.  In particular, Plaintiffs contend that none of the studies Cargill cites addresses the effects of objects falling from a height and striking the subject on the top of his head and back, and that Cargill has failed to recreate these conditions and test the theory himself.  Here, Cargill has reached limited conclusions based on his knowledge of the circumstances surrounding the accident and the findings of various peer-reviewed articles.  These articles offer relevant information regarding the head accelerations associated with mild traumatic brain injury and vigorous everyday activities.  The statistics cited in the articles are the result of tests conducted by independent biomechanical engineers.  Plaintiffs do not seem to contend that these tests are unreliable, merely that their results are not sufficient evidence to support Cargill's conclusions. But this argument goes to the weight, not the admissibility, of Cargill's expert testimony and report.  Accordingly, the Court finds that Cargill's conclusions as to the nature of Rodriguez's head acceleration when compared to

everyday head accelerations are admissible.

Plaintiffs also seek to preclude Cargill's opinion that none of the damage to the bulletin board can be "definitively associated" with the accident. They argue that Cargill never tested this theory and that his conclusion is based on an unreliable methodology. Cargill's report indicates, however, that he engaged in a detailed review of the damage to the bulletin board and determined the direction of any force that might have caused such damage. Cargill's conclusion, moreover, is a limited one and not a categorical exclusion of any possibility that the damage was caused as a result of the board's fall. The Court therefore finds that Plaintiffs' arguments go to the weight rather than the admissibility of Cargill's testimony, and denies their motion with regards to this aspect of the expert report.

Finally, Plaintiffs argue that Defendants served the expert witness disclosure for Cargill after the deadlines set for expert and rebuttal disclosures, and that the service of this disclosure did not permit Plaintiffs sufficient opportunity for rebuttal. Because the Court has previously granted the parties' joint motion to deem all expert discovery submitted by June 20, 2012, timely (see docket entry nos. 64 and 78), the Court finds that Defendants' June 5, 2012, service of expert witness disclosure for Cargill was timely.

## CONCLUSION

For the foregoing reasons, Defendants' motion to preclude the expert testimony of Michael Kravitz is denied in its entirety. Plaintiffs' motion to preclude the expert testimony of Robert Cargill is granted to the extent that Plaintiffs seek to preclude Cargill from testifying as to the specific cause of Rodriguez's particular injury, and denied to the extent that Plaintiffs seek to exclude testimony regarding the potential head acceleration Rodriguez experienced and the

cause of the damage to the bulletin board.  This Memorandum Opinion and Order resolves docket entries no. 57 and 60.


SO ORDERED.


Dated: New York, New York
       March 4, 2013

                                                                  /S
                                          LAURA TAYLOR SWAIN
                                          United States District Judge